**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

DEC 0 5 2013

DAVID J. MALAND, CLERK
BY
DEPUTY _____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 1:13CR 123 |
| | § | Clark/ Giblin |
| JOHN Q. A. WEBB, JR, M.D., and | § | |
| KARI MANNINO | § | |

## INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

### General Allegations

At all times material to this Information:

1.      **John Q. A. Webb, Jr.** was licensed to practice medicine in the State of Texas as a Medical Doctor on January 17, 1974.  **John Q. A. Webb, Jr.** was a provider for Medicare, Blue Cross Blue Shield, and Aetna health care benefit programs.

2.      **John Q. A. Webb, Jr.** owned, managed, and operated Beaumont Medical Clinic, which was located at 5220 Eastex Freeway, Beaumont, Texas.  **John Q. A. Webb, Jr.** was the sole physician providing services at Beaumont Medical Clinic since 2007.  All claims were submitted under Beaumont Medical Clinic's provider number, with **John Q. A. Webb, Jr.** as the performing physician.

3.      **Kari Mannino** was the office manager at Beaumont Medical Clinic.

4.      Many of **John Q. A. Webb Jr.'s** patients were enrolled in the Medicaid program.

## Federal Health Care Programs

5.      The Medicare Program ("Medicare") is a federal health care program providing benefits to persons who are over the age of sixty-five and some persons under the age of sixty-five who are blind or disabled. Individuals who receive benefits under Medicare are referred to as Medicare "beneficiaries."

6.      The Texas Medical Assistance Program ("Medicaid") is a health care benefit program jointly funded by the State of Texas and the federal government.  The Medicaid program helps pay for reasonable and necessary medical procedures and services provided to individuals who are deemed eligible under state low-income programs.  Individuals who receive Medicaid program benefits are referred to as "recipients."

7.      Medicare, Medicaid, Blue Cross Blue Shield (BCBS), and Aetna are all "health care benefit programs," as defined by 18 U.S.C. § 24(b), in that each is a public or private plan affecting commerce under which medical benefits, items, and services are provided to individuals and under which individuals and entities who provide medical benefits, items, or services may obtain payments.

8.      Medicare, Medicaid, BCBS and Aetna require provider physicians sign agreements in which they state that they are familiar with each programs' billing requirements and in which they promise to abide by the policies and procedures of the programs and promise not to submit false or fraudulent claims.

9.      Medicare, Medicaid, BCBS and Aetna require that a physician document every service rendered to an individual for which a claim is submitted.  This

documentation is part of a patient's medical record, which physicians are required to

retain per each program.

     10.    Claim Submission Process. All accepted providers, typically doctors or

other health care entities, receive a unique provider identification number to be used on

claims submitted for payment. When a service is rendered by the provider to a

beneficiary, recipient or member patient, the provider completes a standardized claim

form, or submits claims through an electronic data interchange (EDI) to a carrier.   In

order to receive payment for services rendered, the provider must (1) submit a claim

which sets forth the recipient's diagnosis or the nature of the illness or injury, and (2)

maintain documentation that the service was medically necessary. Claims are filed using

billing codes for various office visits, procedures, and diagnoses common to a particular

specialty or practice. On the claim forms, the provider describes the services that it

provided using standardized codes that correspond to the procedures or devices used.

These standardized codes are used in order to ensure that the many providers with whom

a health care benefit program interacts use a common system to describe their services.

The procedure codes are set forth in either the Current Procedural Terminology (CPT)

Manual, which is published by the American Medical Association (AMA), or the

Healthcare Common Procedure Coding System (HCPCS) manual, which is published by

the Centers for Medicare/Medicaid Services (CMS). It is the responsibility of the

medical provider submitting a claim to select the CPT code or HCPCS code that correctly

describes the procedure performed to the highest level of specificity. Providers are

prohibited from selecting a code that merely approximates the service provided. Where

no such service or procedure code exists, providers must report the service using the

appropriate unlisted procedure or service code, which will require a specific description

of devices used, services rendered, and/or treatment administered.

## COUNT ONE – TWENTY-EIGHT

Violation:  18 U.S.C. §§
1347 and 2
(Health care fraud; Aiding
and abetting)

The General Allegations and Federal Health Care Programs sections of this

Indictment are re-alleged and incorporated by reference as though fully set forth herein.

From in or about January 2008, and continuing through in or about December

2011, the exact dates being unknown to the Grand Jury, in the Eastern District of Texas,

and elsewhere, the defendants, **John Q. A. Webb, Jr.** and **Kari Mannino**, each aiding

and abetting each other and others known and unknown to the Grand Jury, did knowingly

and willfully execute and attempt to execute a scheme and artifice to defraud a health

care benefit program affecting commerce, as defined in 18 U.S.C. §24(b), that is,

Medicare, Medicaid, BCBS and Aetna, and to obtain, by means of materially false and

fraudulent pretenses, representations, and promises, money and property owned by, and

under the custody and control of, said health care benefit programs, in connection with

the delivery of and payment for health care benefits, items, and services, in violation of

18 U.S.C. §§  1347 and 2.

THE SCHEMES AND ARTIFICES

**Physical Therapy**

Health care benefit programs require that physical therapy be performed by a qualified physician, physical therapist, or auxiliary personnel if the supervising physician or physical therapist is physically present in the room at the time the service is provided. The actual physical therapy is billed per procedure, in 15 minute increments.

**John Q. A. Webb, Jr.** never employed a licensed physical therapist and all physical therapy procedures were billed as if **John Q. A. Webb, Jr.** had performed the procedure. All physical therapy procedures were performed by unqualified personnel, with no medical training, and were never directly supervised by **John Q. A. Webb, Jr.**

From in or about January 2008, and continuing through in or about December 2011, **John Q. A. Webb, Jr.** and **Kari Mannino** submitted or caused the submission of claims for physicians' services for which payment may be made under a health care benefit program to Medicare, BCBS and Aetna, for physical therapy sessions which were performed by unqualified personnel and fraudulently submitted approximately $133,511.00 in claims to Medicare and were paid approximately $23,194.96; fraudulently submitted approximately $70,618.00 in claims to BCBS and were paid approximately $22,890.25; and fraudulently submitted approximately $22,875.00 to Aetna and were paid approximately $2,976.53.

On or about the below dates, **John Q. A. Webb, Jr.** and **Kari Mannino** knowingly and willfully executed and attempted to execute the aforesaid scheme by

causing to be processed and paid the following claims submitted to the below listed

health care benefit programs for physical therapy sessions, which were not performed by

qualified personnel, causing a loss to the below listed health care benefit program.

| Count | | | | | |
|-------|------|----------|------------------------------------------------------------------------------|----------|---------|
| 1 | B.B. | 03/22/10 | Application of a modality to 1 or more areas; Electrical Stimulation (Manual), each 15 minutes | Medicare | $39.05 |
| 2 | B.B. | 03/22/10 | Therapeutic procedure, 1 or more areas, each 15 minutes | Medicare | $69.36 |
| 3 | D. V. | 12/15/09 | Application of a modality to 1 or more areas; Electrical Stimulation (Manual), each 15 minutes | Medicare | $37.20 |
| 4 | D.V. | 12/15/09 | Therapeutic procedure, 1 or more areas, each 15 minutes | Medicare | $65.88 |
| 5 | C.J. | 04/13/10 | Application of a modality to 1 or more areas; Electrical Stimulation (Manual), each 15 minutes | Medicare | $39.05 |
| 6 | C.J. | 04/13/10 | Therapeutic procedure, 1 or more areas, each 15 minutes | Medicare | $69.36 |
| 7 | P.M. | 09/03/09 | Application of a modality to 1 or more areas; Electrical Stimulation (Manual), each 15 minutes | Medicare | $37.20 |
| 8 | P.M. | 09/03/09 | Therapeutic procedure, 1 or more areas, each 15 minutes | Medicare | $65.88 |

**Nerve Conduction Study (NCS)**

NCS is an electric nerve stimulation test designed to show irritated nerve roots in

the cervical and lumbar region.  Health care benefit programs require that a NCS be

performed by a qualified and/or certified physician or a qualified and/or certified physical therapist.

**John Q. A. Webb, Jr.** is not certified by the American Board of Electrodiagnostic Medicine or the American Board of Medical Specialties in neuromuscular medicine, electrodiagnosis, or clinical neurophysiology. **John Q. A. Webb, Jr.** did not complete a structured didactic and clinical training program in NCS. Therefore, **John Q. A. Webb, Jr.** is not qualified to perform NCS. Further, **John Q. A. Webb, Jr.** never employed a certified or qualified physical therapist to perform NCS. All NCS procedures were billed as if **John Q. A. Webb, Jr.** was qualified and had performed the procedure. All NCS procedures were performed by unqualified personnel with no medical training.

From in or about January 2008, and continuing through in or about December 2011, **John Q. A. Webb, Jr.** and **Kari Mannino** submitted or caused the submission of claims for physicians' services for which payment may be made under a health care benefit program to Medicare, BCBS and Aetna, for NCS which were performed by unqualified personnel and fraudulently submitted approximately $117,610.00 in claims to Medicare and were paid approximately $22,435.10; fraudulently submitted approximately $142,500.00 in claims to BCBS and were paid approximately $70,407.91; and fraudulently submitted approximately $42,180.00 to Aetna and were paid approximately $7,275.20.

On or about the below dates, **John Q. A. Webb, Jr.** and **Kari Mannino** knowingly and willfully executed and attempted to execute the aforesaid scheme by causing to be processed and paid the following claims submitted to the below listed

health care benefit programs for NCS, which were not performed by qualified personnel,

causing a loss to the below listed health care benefit program.

| Count | ▓ | ▓ | ▓ | ▓ | ▓ |
|---|---|---|---|---|---|
| 9 | B.B. | 03/22/10 | Nerve Conduction, Amplitude and Latency/Velocity Study | Medicare | $219.50 |
| 10 | J.F. | 10/25/10 | Nerve Conduction, Amplitude and Latency/Velocity Study | Medicare | $224.30 |
| 11 | L.O. | 10/26/09 | Nerve Conduction, Amplitude and Latency/Velocity Study | Medicare | $204.53 |
| 12 | R.P. | 01/11/10 | Nerve Conduction, Amplitude and Latency/Velocity Study | Medicare | $170.27 |
| 13 | J.C. | 04/05/11 | Nerve Conduction, Amplitude and Latency/Velocity Study | Medicare | $242.50 |
| 14 | N.M. | 05/17/11 | Nerve Conduction, Amplitude and Latency/Velocity Study | Medicare | $242.50 |
| 15 | S.C. | 04/04/11 | Nerve Conduction, Amplitude and Latency/Velocity Study | Medicare | $242.50 |
| 16 | C.D. | 04/08/11 | Nerve Conduction, Amplitude and Latency/Velocity Study | Medicare | $242.50 |
| 17 | G.G. | 04/21/11 | Nerve Conduction, Amplitude and Latency/Velocity Study | Medicare | $242.50 |
| 18 | R.E. | 04/25/11 | Nerve Conduction, Amplitude and Latency/Velocity Study | Medicare | $242.50 |

### Opiate Detoxification

Health care benefit programs allow licensed opiate detoxification providers to bill

according to a graduated scale of complexity, each with a distinct procedure code.  More

complex visits are paid at a higher rate than lower, less complicated visits.  The CPT

codes are specific and defined, in order to account for variations in office visits and

treatment, including if treated by a physician, physician's assistant or registered nurse.

**John Q. A. Webb, Jr.** had received training in opiate detoxification and knew a

physician was required for the program.   In spite of this knowledge, **John Q. A. Webb, Jr.** allowed unqualified personnel to see and treat patients without his presence and then billed health care benefit programs as if he provided the treatment.

From in or about January 2008, and continuing through in or about December 2011, **John Q. A. Webb, Jr.** and **Kari Mannino** submitted or caused the submission of claims for physicians' services for which payment may be made under a health care benefit program to Medicare, BCBS and Aetna, for opiate detoxification, which were performed by unqualified personnel and fraudulently submitted approximately $70,275.70 in claims to Medicare and were paid approximately $20,428.06; fraudulently submitted approximately $364,403.69 in claims to BCBS and were paid approximately $138,874.78; and fraudulently submitted approximately $126,909.96 to Aetna and were paid approximately $38,988.96.

On or about the below dates, **John Q. A. Webb, Jr.** and **Kari Mannino** knowingly and willfully executed and attempted to execute the aforesaid scheme by causing to be processed and paid the following claims submitted to the below listed health care benefit programs for opiate detoxification treatment, which were not performed by qualified personnel, causing a loss to the below listed health care benefit program.

| Count | Patient Name | Approx Date of Service | Description | Benefit Program | Approx Amount Paid |
|-------|--------------|------------------------|-------------|-----------------|--------------------|
| 19 | K.W. | 06/21/10 | Office Outpt Est 25 Min. | Medicare | $78.57 |
| 20 | K.W. | 06/21/10 | | Medicare | $75.86 |

|  |  |  | Phys Svc Dir Contact 1st Hr. |  |  |
|---|---|---|---|---|---|
| 21 | T.R. | 09/07/10 | Office Outpt Est 40 Min. | Medicare | $132.92 |
| 22 | T.R | 09/07/10 | Phys Svc Dir Contact 1st Hr. | Medicare | $80.28 |
| 23 | S.G. | 09/08/10 | Office Outpt New 60 Min. | Medicare | $154.30 |
| 24 | S.G. | 09/08/10 | Phys Svc Dir Contact 1st Hr. | Medicare | $75.86 |

### Prescription Fraud

Health care benefit programs reimburse pharmacies for valid prescription medication made by registered physicians in the usual course of professional practice. **John Q. A. Webb, Jr.** and **Kari Mannino** allowed unqualified personnel to stamp **John Q. A. Webb, Jr.'s** signature on a prescription pad or use a blank, pre-signed prescription, using his registered Drug Enforcement Agency (DEA) number and present the prescription to Medicaid patients, outside the usual course of professional practice.  The Medicaid patients would then take the prescription to a pharmacy, which would then fill the prescription and bill the Medicaid Vendor Drug program.

From in or about January 2008, and continuing through in or about December 2011, **John Q. A. Webb, Jr.** and **Kari Mannino** submitted or caused the submission of claims for fraudulent prescriptions, which were not written by a physician, for which payment may be made under a health care benefit program to Medicaid for prescription medications, which were written and signed by unqualified personnel causing the fraudulent submissions of approximately $23,757.94.00 in claims to Medicaid, which paid approximately $18,786.46.

On or about the below dates, **John Q. A. Webb, Jr.** and **Kari Mannino** knowingly and willfully executed and attempted to execute the aforesaid scheme by causing to be processed and paid the following claims submitted to Medicaid for prescriptions, which were not written in the usual course of professional practice, causing a loss to the below listed health care benefit program.

| Count | Patient Name | Approx Date of Rx | Description | Benefit Program | Approx Amount Paid |
|---|---|---|---|---|---|
| 25 | R.N. | 06/21/10 | Suboxone 8 Mg-2 Mg Tablet | Medicaid | $7.76 |
| 26 | D.L. | 06/25/10 | Suboxone 8 Mg-2 Mg Tablet | Medicaid | $557.33 |
| 27 | R.M. | 09/09/10 | Suboxone 8 Mg-2 Mg Tablet | Medicaid | $760.97 |
| 28 | G.H. | 09/09/10 | Xanax | Medicaid | $8.04 |

All in violation of 18 U.S.C. §§ 1347 and 2.

## COUNT TWENTY-NINE

<u>Violation</u>:  18 U.S.C. § 1349
(Conspiracy to commit health care fraud)

The General Allegations,  Federal Health Care Programs sections, and the Schemes and Artifices alleged in Counts One through Twenty-eight of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

From in or about January 2008, and continuing through in or about December 2011, the exact dates being unknown to the Grand Jury, in the Eastern District of Texas, and elsewhere, the defendants, **John Q. A. Webb, Jr.** and **Kari Mannino**, did knowingly and willfully combine, conspire, confederate and agree with others, known and unknown to the Grand Jury, to violate 18 U.S.C. § 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined 18 U.S.C. § 24(b), that is, Medicare, Medicaid, BCBS and Aetna, to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services in violation of 18 U.S.C. § 1349.

Specifically, **John Q. A. Webb, Jr.** and **Kari Mannino** submitted or caused the submission of claims for physicians' services for which payment may be made under a health care benefit program to Medicare, BCBS and Aetna, knowing that the individual who rendered the services was not licensed as a physician. **John Q. A. Webb, Jr.** and **Kari Mannino** concealed and attempted to conceal the submission of false and fraudulent claims by representing to Medicare, Medicaid, BCBS and Aetna, directly or indirectly, at times that **John Q. A. Webb, Jr.** treated the patients directly or had licensed staff acting under his supervision when that was not the service provided.

## Manner and Means of the Conspiracy

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

To achieve the goals of the conspiracy, the defendants and their co-conspirators devised and carried out a scheme to defraud Medicare, BCBS and Aetna through the submission of claims for physician's services, knowing that the individual who furnished the services was not licensed as a physician. **John Q. A. Webb, Jr.** instructed his employees to treat patients, prescribe medication, perform physical therapy, perform nerve conduction studies, and operate within Beaumont Medical Clinic as if each was a licensed medical professional. **John Q. A. Webb, Jr.** allowed his employees to fill out prescriptions and stamp his signature on prescriptions for patients treated in the Beaumont Medical Clinic without seeing a licensed medical professional and without a licensed medical professional on the premises. **John Q. A. Webb, Jr.** maintained valid Medicare, BCBS and Aetna provider numbers to use in submitting claims for physician's services rendered by individuals who were not licensed medical professionals. **John Q. A. Webb, Jr.** maintained a bank account for the purpose of receiving, concealing, and disbursing the Medicare, BCBS and Aetna payments that were made as a result of the fraudulent claims.

**Kari Mannino** maintained control of Beaumont Medical Clinic at times where **John Q. A. Webb, Jr.** was absent from the premises. **Kari Mannino** instructed employees to treat patients, prescribe medication, perform physical therapy, perform

nerve conduction studies, and operate within Beaumont Medical Clinic as if each was a licensed medical professional.  **Kari Mannino** caused the submission of false and fraudulent claims to Medicare, BCBS and Aetna using **John Q. A. Webb, Jr.'s** provider numbers to be submitted for claims for physician's services rendered by individuals who were not licensed medical professionals

Based on these false and fraudulent claims, reimbursement was made by check and/or electronic funds transfer ("EFT") from Medicare, BCBS and Aetna to **John Q. A. Webb, Jr.  John Q. A. Webb, Jr.** obtained control of the funds paid by Medicare, BCBS and Aetna and diverted these monies for his personal use and benefit, as well as that of others.

**John Q. A. Webb, Jr.** and **Kari Mannino** did submit false claims to Medicare in excess of $1,723,717.71 with a total amount paid by Medicare being $501,883.28.  **John Q. A. Webb, Jr.** and **Kari Mannino** did cause the submission of false claims to Medicaid in excess of $24,206.48 with a total amount paid by Medicaid being $18,955.87.  **John Q. A. Webb, Jr.** and **Kari Mannino** did submit false claims to BCBS in excess of $1,473,111.92 with a total amount paid by BCBS being $506,075.33.  **John Q. A. Webb, Jr.** and **Kari Mannino** did submit false claims to Aetna in excess of $402,713.73 with a total amount paid by Aetna being $98,903.39.  The total amount paid to **John Q. A. Webb, Jr.** was in excess of $1,106,862.00.

## Acts in Furtherance of the Conspiracy

In furtherance of the conspiracy, and to effect the objects thereof, the defendants aided and abetted by others known and unknown to the Grand Jury, performed and

caused to be performed, among other things, the overt acts set forth herein and then re-alleged and incorporated in Counts One through Twenty-eight of this Indictment.

## Overt Acts

1.      On or about September 9, 2010, **John Q. A. Webb, Jr.** and **Kari Mannino** caused Medicare to be billed for physical therapy treatment by **John Q. A. Webb, Jr.** of beneficiary E.J. even though **John Q. A. Webb, Jr.** was out of town.

2.      On or about June 22, 2010, **John Q. A. Webb, Jr.** and **Kari Mannino** caused BCBS to be billed for a new patient visit for beneficiary C.B. even though **John Q. A. Webb, Jr.** was out of town and did not employ anyone licensed to perform new patient visits.

3.      On or about June 24, 2010, **John Q. A. Webb, Jr.** and **Kari Mannino** caused Aetna to be billed for opioid detoxification treatment of beneficiary S.E. even though **John Q. A. Webb, Jr.** was out of town and did not employ anyone else qualified to perform the services.

4.      On or about August 17, 2010, **John Q. A. Webb, Jr.** and **Kari Mannino** caused BCBS to be billed for the treatment of scoliosis for beneficiary M.R. by **John Q. A. Webb, Jr.** even though M.R. was being treated for opiate detoxification.

All in violation of 18 U.S.C. § 1349.

## COUNTS THIRTY – THIRTY-FOUR

Violation:  21 U.S.C. § 846
(Conspiracy to distribute a
controlled substance)

The General Allegations and Federal Health Care Programs sections of this

Indictment are re-alleged and incorporated by reference as though fully set forth herein

On or about the dates set forth below, in the Eastern District of Texas, and

elsewhere, the defendants, **John Q. A. Webb, Jr.** and **Kari Mannino**, did knowingly and

intentionally combine, conspire, confederate and agree with others, known and unknown

to the Grand Jury to distribute a Schedule III controlled substance, namely,

buprenorphine, as set forth below:

| | | | |
|---|---|---|---|
| 30 | R.N. | 06/21/10 | Suboxone 8 Mg-2 Mg Tablet |
| 31 | D.L. | 06/25/10 | Suboxone 8 Mg-2 Mg Tablet |
| 32 | R.M. | 09/09/10 | Suboxone 8 Mg-2 Mg Tablet |
| 33 | G.H. | 09/09/10 | Suboxone 8 Mg-2 Mg Tablet |
| 34 | K.W. | 06/21/10 | Suboxone 8 Mg-2 Mg Tablet |

In violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, all in violation of 21

U.S.C. § 846.

## COUNTS THIRTY-FIVE – FORTY-THREE

Violation:  21 U.S.C. § 841(a)(1);
18 U.S.C. § 2
(Distributing a controlled
substance; Aiding and abetting)

The General Allegations and Federal Health Care Programs sections of this

Indictment are re-alleged and incorporated by reference as though fully set forth herein

On or about the dates set forth below, in the Eastern District of Texas, and

elsewhere, the defendants, **John Q. A. Webb, Jr.** and **Kari Mannino**, each aiding and

abetting each other and others known and unknown to the Grand Jury, did knowingly and

intentionally distribute a Schedule III controlled substance, namely, buprenorphine, as set

forth below:

| Count | Patient Name | Approx Date of Rx | Description |
|-------|--------------|-------------------|-------------|
| 35 | D.P. | 06/22/10 | Suboxone |
| 36 | C.B. | 06/22/10 | Suboxone |
| 37 | S.R. | 06/22/10 | Suboxone |
| 38 | M.L. | 06/25/10 | Suboxone |
| 39 | R.J. | 09/07/10 | Suboxone |
| 40 | P.T. | 09/08/10 | Suboxone |
| 41 | S.G. | 09/08/10 | Suboxone |
| 42 | D.W. | 09/09/10 | Suboxone |
| 43 | T.J. | 09/09/10 | Suboxone |

All in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

Upon conviction of one or more of the offenses alleged in Counts One through Forty-three of this Indictment, Defendants **John Q. A. Webb Jr.** and **Kari Mannino** shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violations, including but not limited to the following:

1. PERSONAL PROPERTY

A.   MONEY JUDGMENT, being a sum of money equal to $1,106,862.00 in United States currency representing the amount of proceeds obtained as a result of a health care offense, in violation of 18 U.S.C. §§ 1347 and 1349.

2. SUBSTITUTE ASSETS

If any of the above-described forfeitable property, as a result of any act or omission of the Defendant:

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States,   pursuant to 21 U.S.C. § 853(p) as

incorporated by 18 U.S.C. § 982(b),  to seek forfeiture of any other property of said

Defendant up to the value of the forfeitable property described above.

By virtue of the commission of the offenses alleged in Counts One through Forty-

three of this Indictment, any and all interest the Defendant has in the above-described

property is vested in the United States and hereby forfeited to the United States pursuant

to

18 U.S.C. § 982(a)(7).

A TRUE BILL

_____
*C AJ*

GRAND JURY FOREPERSON

_____
12/5/2013

Date

JOHN M. BALES
UNITED STATES ATTORNEY

_____

CATHERINE LEVACY COCKRELL
SPECIAL ASSISTANT UNITED STATES ATTORNEY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 1:13CR 12-3 |
| | § | |
| JOHN Q.A. WEBB, JR. (1) and | § | |
| KARI MANNINO (2) | § | |

## NOTICE OF PENALTY

### COUNTS 1-28

VIOLATION:           Title 18, United States Code, Sections 1347;
                     Title 18, United States Code, Section 2

                     Health Care Fraud

PENALTY:             Imprisonment of not more than ten years, and/or a fine of
                     $250,000 to be followed by not more than three (3) years
                     supervised release.

SPECIAL ASSESSMENT: $100.00 each count

### COUNT 29

VIOLATION:           Title 18, United States Code, Section 1349

                     Conspiracy to Commit Health Care Fraud

PENALTY:             Imprisonment of not more than ten years, and/or a fine of
                     $250,000 to be followed by not more than three (3) years
                     supervised release.

SPECIAL ASSESSMENT: $100.00 each count

## **COUNTS 30-34**

VIOLATION:              Title 21, United States Code, Section 846

                        Conspiracy to Distribute a Controlled Substance

PENALTY:                Imprisonment for not more than ten years, and/or a fine of
                        $500,000 to be followed by not more than three (3) years
                        supervised release.

SPECIAL ASSESSMENT: $100.00 each count.

## **COUNTS 35-43**

VIOLATION:              Title 21, United States Code, Section 841(a)(1);
                        Title 18, United States Code, Section 2

                        Distributing a Controlled Substance

PENALTY:                Imprisonment for not more than ten years, and/or a fine of
                        $500,000 to be followed by not more than three (3) years
                        supervised release.

SPECIAL ASSESSMENT: $100.00 each count.